UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


```
                                  )
BUNTHOEUN KONG,                   )
                                  )
          Petitioner,             )
                                  )    Civil Action
v.                                )    No. 1:18-cv-10901-GAO
                                  )
KIRSTJEN M. NIELSEN, ET AL.       )
                                  )
          Respondents.            )
                                  )
```

BEFORE THE HONORABLE GEORGE A. O'TOOLE, JR.
UNITED STATES DISTRICT JUDGE


MOTION HEARING

June 6, 2018
10:35 a.m.


John J. Moakley United States Courthouse
Courtroom No. 22
One Courthouse Way
Boston, Massachusetts  02210


Linda Walsh, RPR, CRR
Official Court Reporter
John J. Moakley United States Courthouse
One Courthouse Way, Room 5205
Boston, Massachusetts  02210
lwalshsteno@gmail.com

```
 1    APPEARANCES:

 2    On Behalf of the Petitioner:
            NORTHEAST JUSTICE CENTER
 3          By: Ethan R. Horowitz, Esq.
            50 Island Street, Suite 203B
 4          Lawrence, MA  01840
            781-599-7730
 5          ehorowitz@njc-ma.org

 6    On Behalf of the Respondents:
            UNITED STATES ATTORNEY'S OFFICE
 7          By: Jessica P. Driscoll, Esq.
            1 Courthouse Way, Suite 9200
 8          Boston, MA  02210
            617-748-3398
 9          jessica.driscoll@usdoj.gov

10

11
                       Proceeding reported and produced
12                        by computer-aided stenography

13

14

15

16

17

18

19

20

21

22

23

24

25
```

P R O C E E D I N G S

THE CLERK:  Court is in session.  Please be seated for a motion hearing in the case of *Brunthoeun Kong versus Nielsen, et al.*, 18-10901.

Would counsel identify yourselves for the record.

MR. HOROWITZ:  Ethan Horowitz for the Petitioner, Brunthoeun Kong, your Honor.

MS. DRISCOLL:  Good morning, your Honor.  Jessica Driscoll for the Respondent.

THE COURT:  We have two motions.  I think yours is the first.

MR. HOROWITZ:  Thank you, your Honor.

As the Court is aware, the writ that brings us here today is a writ for -- writ of habeas corpus.  As the Court is likely aware, the facts underlying the petition for this writ are relatively straightforward and, as far as I can tell, undisputed.

The Petitioner, Bunthoeun Kong, was ordered removed from the United States to Cambodia in 1996 because of a criminal activity he undertook as a young man.  Mr. Kong could not be removed to his native Cambodia by the then Immigration and Nationalization Service because of United States' relations with Cambodia at the time, and in the year of 2000, Mr. Kong was released from immigration detention because INS was unable to remove him.

|   |   |
|---|---|
| 1 | Between June of 2000 and April of this year, Mr. Kong |
| 2 | lived among us pursuant to an order of supervision as parolee, |
| 3 | if you will.  Mr. Kong lived in Lynn, Massachusetts, |
| 4 | scrupulously complied with all terms of his order of |
| 5 | supervision, and lived what really can only be described as a |
| 6 | peaceful and productive life.  Mr. Kong married a U.S. citizen |
| 7 | wife, raised -- or was raising three United States citizens |
| 8 | children, pursued a career, and, frankly, did everything he was |
| 9 | supposed to do until April 17th, I believe, of this year -- let |
| 10:37  10 | me double-check that -- when officers of the Immigration and |
| 11 | Customs Enforcement, Respondent, ICE, stopped Mr. Kong on his |
| 12 | way to work about 5:00 a.m. in the morning of April 17th, |
| 13 | apparently revoked his order of supervision, arrested him, |
| 14 | detained him, incarcerated him at various facilities in the |
| 15 | Commonwealth and other jurisdictions and, again, for the |
| 16 | apparent purpose of expediting his removal to Cambodia. |
| 17 | The relief Mr. Kong seeks -- and I guess the most |
| 18 | important point, your Honor -- I forgot to mention -- was that |
| 19 | this action undertaken by the Respondents, Department of |
| 10:38  20 | Homeland Security and Immigration and Customs Enforcement, was |
| 21 | undertaken without any advanced warning to Mr. Kong, no notice, |
| 22 | no opportunity to contest, and, frankly, no opportunity to be |
| 23 | heard until today.  This is the first time Mr. Kong will have |
| 24 | been heard on the legality of Respondent's, the DHS and ICE, |
| 25 | conduct for him. |

1          Mr. Kong's petition for writ of habeas corpus is two

2     forms of relief.  One is his immediate release from detention

3     because he was detained in violation of the Fifth Amendment

4     without any due process of law, and the second relief he seeks

5     is a temporary stay of his removal, again, because of the

6     process by which ICE and DHS revoked his order of supervision

7     after 18 years and in which they are attempting to expedite his

8     removal after this time violates due process.

9          So if it pleases the Court, although there are two

10:39 10    separate motions before the Court, in my estimation they are

11     really the same issues, the same constitutional issues raised

12     by both motions.  And, if I may, I would like to argue those

13     two constitutional issues and then perhaps the Respondent, the

14     Government, will then be able to respond to them.

15          The first issue is a question of constitutional due

16     process, really whether Mr. Kong's constitutional rights were

17     violated by the Department of Homeland Security and Immigration

18     and Customs Enforcement when they revoked his order of

19     supervision without any notice or process, arrested him,

10:39 20    detained him, incarcerated him, et cetera.  And as the Court is

21     aware, the due process analysis is really one of liberty

22     interests.  And Mr. Kong, through his papers and through his

23     petition, asserts that the Government, the three Respondents,

24     primarily DHS and ICE, deprived Mr. Kong of two very important

25     liberties without any process.  I don't think it's disputed,

your Honor, at least in the record before the Court, that
neither ICE nor DHS provided Mr. Kong any notice or any
opportunity to be heard prior to taking the action that they
did and which is outlined in the petition.

The first liberty interest, and I'll start with this
one because I think it's relatively uncontroversial, is
Mr. Kong's right to be free from detention.  Mr. Kong, I think
it's undisputed, was allowed -- was released from detention in
2000 because then INS determined that Cambodia was not
repatriate.  I think the applicable language is that there is
no substantial likelihood that Mr. Kong will be removed in the
reasonable foreseeable future.

Mr. Kong was released on parole pursuant to an order
of supervision.  Both the Supreme Court and the executive at
the Department of Homeland Security recognized that an alien in
a situation like that, a situation just like Mr. Kong, has a
liberty interest in not being detained, and the reason for that
is simple, your Honor.  If an alien is being detained pursuant
by the immigration authority, the only lawful purpose for that
detention is to affect the removal, and once that removal
cannot be affected, the detention becomes unconstitutional.  So
that determination was made by ICE.

Mr. Kong was let go.  And the corollary to that
liberty interest of not being detained for no reason is he
cannot be redetained unless he's had notice and an opportunity

to be heard.  Again, this is a liberty interest in not being

detained without due process.  Even an alien who has been

ordered removed is recognized in the *Zadvydas* decision, is

recognized by DHS regulation 241.13.  Mr. Kong, your Honor,

clearly had and has a liberty interest in not being redetained

unless and until the Government makes an appropriate -- a

proper determination, and now there is a substantial likelihood

that he will be removed to Cambodia in the reasonably

foreseeable future.  That determination, your Honor, as far as

I can tell, was never properly made.

DHS -- ICE officers came to Mr. Kong's house, scooped

him up without any notice, without any written determination of

any kind, and unilaterally determined, okay, now he can be

removed.  That action, your Honor, violated the

Court's -- Supreme Court's opinion in *Zadvydas* and, frankly, it

violated the Department of Homeland Security's own regulations.

I would call the Court's attention to 8 CFR 241.13,

Subpart i, which creates a clear process which arguably

comports with the constitutional process in which a parolee

like Mr. Kong, who had been deemed to be not likely to be

removed in the reasonably foreseeable future, can only be

redetained if the agency, Homeland Security or ICE, notifies

Mr. Kong of the reasons for their new determination, gives him

an opportunity to respond, and then if there are any contested

facts, to allow those contested facts to be decided by some

1   kind of an evaluator.  None of that happened.

2       The record before the Court, and the record, as far as

3   Mr. Kong's concerned, is that DHS and -- neither DHS nor ICE

4   have given any reason, have given any evidence, given any

5   explanation why those agencies think that now Mr. Kong --

6   there's a substantial likelihood that he would be removed to

7   Cambodia in the reasonable foreseeable future.  That alone,

8   your Honor, should allow or would require this Court, just as

9   it did in the Rombot case before Judge Saris, to determine if

10:43 10   Mr. Kong's due process and detention violates the Constitution,

11   that he ought to be released immediately, if the Court desires,

12   pursuant to his -- Mr. Kong's Rule 65 motion, or at least at

13   the end of these proceedings, unless and until ICE and the

14   Department of Homeland Security properly make a determination

15   that Mr. Kong is substantially likely to be removed to Cambodia

16   in the reasonably foreseeable future.

17       So, your Honor, with respect to detention, I think the

18   case law and the liberty interest and the Government's

19   misconduct is reasonably clear that it warrants an interim

10:43 20   remedy such that Mr. Kong should be released from detention

21   immediately pursuant to his Rule 65 motion.

22       Now, the second liberty interest, your Honor,

23   that -- that is implicated in Mr. Kong's papers is a more -- is

24   a less binary liberty interest, and maybe, perhaps, a little

25   more controversial.  I'll take a little more time to explain

this.  Unlike the right to be free from detention when an alien has been determined to be not removable in the reasonably foreseeable future, this liberty interest I'm about to discuss -- it is not a binary liberty interest.  It doesn't happen after a certain determination by the Government.  And it only applies to a relatively few set -- excuse me, a relatively small set of parolees, like Mr. Kong, who have been released into society pursuant to orders of supervision for a very long time.

As the record is undisputed before the Court, Mr. Kong, has spent the last 18 years living among us in the United States.  And the liberty interest that he's accrued during this time is neither discrete nor easily defined, but it exists irrespective of his immigration status.  I think the Supreme Court made that clear in the *Landon* decision cited in Mr. Kong's briefs that regardless of Mr. Kong's immigration status, regardless of Mr. Kong's order of removal, he has the right to due process, and due process is always measured by the extent of the deprivation.  The process that is due is always commensurate with the extent of the deprivation, and Mr. Kong's deprivation in this case is tremendous.

In the last 18 years he raised a family, pursued a career, been the primary support for his aged parents, the aged relatives of his wife.  Just about every trapping of Mr. Kong's life will be dismantled by the Government's decision to remove

him.  Now, Mr. Kong acknowledges that this court cannot

challenge his removal order.  Mr. Kong understands that, and,

frankly, Mr. Kong understands that this court could not even

challenge the executive's decision to remove Mr. Kong when it

did.

What Mr. Kong submits, your Honor, is that he has

reasonably relied on the process provided to him by the

Government as a parolee, just like a parolee from a

penitentiary, and then, if he followed the rules and did what

he was supposed to do, he would be given some time to at least

order his affairs and not pursue the necessary relief from his

removal order in front of the Executive Office for Immigration

Review, and that didn't happen, your Honor.  Now, that's not

quite as clearcut as the first liberty interest, to be free

from detention, but Mr. Kong submits, your Honor, and I submit,

that it's an equally important liberty interest.  A nameless

bureaucrat in some governmental office building in Washington

can't simply snap his or her fingers and execute a removal

order and make Mr. Kong disappear after 18 years of complying

with his order of supervision, complying with the terms of his

parole.  He should be given some time.  And I think, in fact,

the Constitution requires that he be given time, time to pursue

any avenues of relief from the Executive Office of Immigration

Review.  And I will represent to the court that I have reviewed

Mr. Kong's draft of his motion to reopen that he will be

1      submitting to the Executive Office of Immigration Review in

2      short order.  And Mr. Kong -- in that family, Mr. Kong is

3      entitled for time to order his affairs before he is removed to

4      Cambodia -- if he is removed to Cambodia permanently.

5           Now, the flip side to these constitutional

6      questions -- and these are the issues raised by the

7      Government's brief -- is does this court have jurisdiction to

8      determine the constitutionality of the habeas conduct?  Does

9      this court have jurisdiction to determine whether the Executive

10:47 10     Branch's revocation of Mr. Kong's parole, his arrest, his

11     detention, his incarceration and his removal, under all those

12     things that the Executive did without notice or without the

13     opportunity to be heard, whether that conduct violates the

14     Fifth Amendment?  The Government's position is no.  The

15     Government's position is that as long as the Executive acts

16     pursuant to the execution of the removal order, the Executive

17     Branch is completely in denial of judicial review, and the

18     Government submits that IMA Section 242 is the basis for that

19     immunization.  The Congress has stripped this Court -- any

10:48 20     Court of reviewing the decisions of the Executive in a

21     situation like that, and, your Honor, I submit that is wholly

22     incorrect.

23          To the extent that Congress intended to strip the

24     Article III Courts of any jurisdiction pursuant to Section 242

25     or Section 242(g), the stripping, the barring of claims, has to

do with interfering with a removal proceeding.  Mr. Kong has
already been ordered removed.  It has to do with interfering
with the Executive decision, perhaps, to defer a removal order.
That is not what Mr. Kong is asking for.  Mr. Kong is asking
this Court to review the constitutionality of the conduct of
the Executive.  Even if Congress had intended that, your Honor,
that's the Court's job.  The Court's job with the Constitution
is to say what the Constitution means, and a judge, whether it
be executive or sometimes the legislative branches, have
violated that Constitution.  A Section 242(g) does not because
it cannot strip this Court of jurisdiction to hear
constitutional issues.

And to the extent that the Court is feeling hesitant
about interfering with the execution of the removal order, I
would just give some examples of clearcut cases in which the
Executive Branch -- I mean the Judicial Branch would have to
interfere with the removal order.  Let's say, for example, the
Executive Branch, the Department of Homeland Security, has a
removal order and attempts to execute it but removes the wrong
person, it would be an outrage, your Honor.  And the
Constitution would absolutely require this court or any Article
III Court to review the decision of the Executive Branch
because it would be unconstitutional.  The Executive Branch
could attempt to remove an alien based on what they call
voluntary departure.  The voluntariness of that departure could

1    have been coerced by torture.  The execution of the removal

2    order pursuant to that voluntary departure, if obtained through

3    torture, would absolutely be reviewable by this Court.

4          So, your Honor, Mr. Kong submits that the procedures

5    employed by the Executive Branch violated the Constitution, and

6    this Court can and must review their constitutionality because

7    that's what the Court is supposed to do under the Constitution.

8          So, in summation -- and I apologize for speaking so

9    quickly.  I tend to do that sometimes -- Mr. Kong submits that

10:50 10    his claims are properly before the Court.  The Court has

11    jurisdiction to decide them, that the Government's Respondents,

12    Homeland Security, Immigration, Customs Enforcement, and the

13    Suffolk County Sheriff violated Mr. Kong's due process rights

14    by the manner in which they have revoked his order of

15    supervision in the conduct that they undertook afterward, and

16    that Mr. Kong, pursuant to Rule 65, is entitled to immediate

17    release from detention as well as a stay of -- his removal

18    during the pendency of these proceedings while the Court

19    finally determines that Mr. Kong's Constitutional rights have

10:51 20    been violated.

21          Thank you, your Honor.

22          THE COURT:  So *Zadvydas*, among other things, I guess,

23    represents the proposition that if the Government takes too

24    long to remove somebody, it can't be detained, right?

25          MR. HOROWITZ:  Yes.

1          THE COURT:  So the suggestion is that the Government

2   should act more quickly to remove someone.  In other words, to

3   execute -- somebody who has a removal order --

4          MR. HOROWITZ:  Your Honor, I would actually --

5          THE COURT:  -- is being detained, and if there's no

6   prospect of a reasonably proximal removal, the detention can't

7   continue; is that --

8          MR. HOROWITZ:  Those are the two parts of *Zadvydas*,

9   yes, your Honor.

10:51 10          THE COURT:  So the pressure is either remove them or

11   let them out on the street?

12          MR. HOROWITZ:  Correct.

13          THE COURT:  Your argument, I gather, is for a

14   further -- an extension of that, either remove him or lose the

15   ability to remove him sometime; is that a mischaracterization?

16          MR. HOROWITZ:  Yes, your Honor.  My understanding of

17   the *Zadvydas* opinion is that a detainee, whether it's Mr. Kong

18   or another detainee, who cannot be removed to his country of

19   origin, has the constitutional right to be free if that removal

10:52 20   is not reasonably foreseeable.  I'm not asking for an extension

21   of *Zadvydas* in any way.  The notion is once that alien becomes

22   free, he can't be summarily removed until the Government is

23   able to establish that the removal now can be foreseeable.  The

24   alien has obtained a constitutional right to process by which

25   the determination of whether he can be removed or not must be

```
 1  established somehow.
 2          THE COURT:  I'm going to the second part of the two
 3  points you made.
 4          MR. HOROWITZ:  Okay.
 5          THE COURT:  Let's get past the idea that you can't be
 6  snatched off the street without some process.
 7          MR. HOROWITZ:  Very good.
 8          THE COURT:  The next question you seem to be arguing
 9  is that there is some constitutional right to a period of time
10  in which you can present a petition for review and ask for, I
11  guess, discretionary judgment by the immigration authorities;
12  is that the -- is that the --
13          MR. HOROWITZ:  That's the gist of it.
14          THE COURT:  -- prognosis?
15          MR. HOROWITZ:  Yes, your Honor.  If I may elaborate a
16  little bit?
17          THE COURT:  Yes.
18          MR. HOROWITZ:  You know, the question really
19  becomes -- I think what the Government will argue, and there is
20  some intuitive appeal to this, that Mr. Kong had his day in
21  court with respect to the removal order.  Mr. Kong had his due
22  process in the 1990s, and he lost and that's over.  So whatever
23  liberty interest he had living in this country was properly
24  taken away, and that's the end of that.
25          What I'm arguing, your Honor, is that over the last
```

10:53 (line 10)

10:53 (line 20)

1   18 years, Mr. Kong has accrued a new liberty interest, a new

2   right, if you will, to remain in this country, perhaps not as

3   robust as the right that had existed previously because, as a

4   lawful permanent resident in the 1990s, Mr. Kong could not be

5   removed.  The burden was on the Government to remove him.  Now,

6   I think, his liberating is much narrower.  He's been ordered

7   removed, but the flip side is he's been living in this country

8   according to our rules and productively for 18 years.  So what

9   I am arguing about is that there is a new liberty interest that

10:54 10  has been developed with Mr. Kong and frankly with any alien --

11             THE COURT:  I guess my question is:  What is it?

12             MR. HOROWITZ:  I think the liberty interest is to be

13  given time, right, some small modicum of time, whether it is to

14  order his affairs -- perhaps Mr. Kong has no relief, he should

15  be able to wind up his life that he's established here for

16  18 years.  The Government should give him notice this is

17  happening.  "Mr. Kong, you are being removed to Cambodia.

18  Mr. Kong, get your affairs in order.  You have two months, and

19  then report to the airport -- report to the detention

10:55 20  facility."  You can slap an ankle bracelet on him, if need be.

21  He should be given time to order his affairs, and ideally, to

22  pursue any relief that may be available to him.

23             Now, the scope of how much time Mr. Kong is entitled

24  to under the Constitution I think is difficult to fathom, but

25  this idea, your Honor, that simply without any notice, without

1    any -- well, again, I'm not talking about notice -- without any

2    time, simply from one day to the next he's asked to report to

3    the detention facility and step on the plane to the Cambodia, I

4    don't think that takes into account the liberties with which

5    Mr. Kong has in fact accrued over the last 18 years of his life

6    in this country.

7           I would analogize it to a parolee in a prison -- or

8    not even a parolee, someone who is maybe under a supervised

9    release in some halfway house.  Once that right is granted,

10:55 10   once the parole is granted, once the supervised relief is

11   granted, the case law in the First Circuit is clear that while

12   the liberty interest in maintaining that right is slanted, it

13   can't be simply taken away from him.

14          THE COURT:  Well, that's your first argument, and I

15   understand that.

16          I'm getting to the second one for the broader right,

17   and I'm just trying to understand how we analyze it and apply

18   it to not only this case but other cases if the principle is to

19   be sort of consistently applied.  That's what I'm -- I

10:56 20   understand completely the humanitarian flavor of this, but I'm

21   looking for the constitutional doctrine, I guess.

22          MR. HOROWITZ:  I think the Constitution requires a

23   process, some process, right?  There should be some expectation

24   if an alien is placed under an order of supervision, he should

25   know up front, okay, this is how your order will be revoked.

1    This is how you will be returned to your native country.  And

2    if DHS, promulgating regulation, is explaining to aliens how

3    that will happen, it can't -- it's a black box right now, your

4    Honor, and aliens have no ability to plan their lives.  I mean,

5    Mr. Kong had 18 years, and this came out of the blue.  Now,

6    granted, the Executive Branch could have given some notice, but

7    there should be a process, there should be a procedure, at the

8    very least, to allow an alien to, I don't know, obtain a

9    guardian for his children, put money into a bank account so

10:57 10   that his or her spouse could access it.

11        I mean, there's some right to a process that I think

12   exists when the Government Executive Branch is renewing their

13   execution of the removal order after decades.  And I don't

14   presume to know what that process is, but it's more than what

15   the Government gave Mr. Kong.  And I would leave it to the

16   Court to decide exactly how much process is due, and there's a

17   spectrum.  It could be a notice and a month to order your

18   affairs and buy a plane ticket.  It could be the greater of

19   120 days or the time it takes to move to reopen an immigration

10:58 20   case.  Obviously Mr. Kong would like more process, but I think

21   the Constitution requires something and the Government is

22   giving him nothing.

23        And I guess I would leave it at that.  I am sorry if I

24   haven't been more helpful.  These are difficult issues, and I

25   don't presume to know the right answer.

1          THE COURT:  Thank you.

2          Ms. Driscoll.

3          MS. DRISCOLL:  Good morning, your Honor.  I'll start

4     with where Mr. Horowitz left off.  The way Judge Stearns

5     answered this question in Rodriguez-Guardardo, which is cited

6     in our papers, is that he said there is no constitutional

7     interest or due process interest in a discretionary action.  So

8     in this case, the Petitioner is being detained pursuant to

9     1231(a)(6), as a criminal alien who is inadmissible.  He's been

10:58 10    detained beyond the 90-day removal period, and under a

11    1231(a)(6), ICE can either hold him beyond 90 days or, if they

12    release him, choose to release him.  In their discretion they

13    do so, and it says, "Shall be under an order of supervision."

14    So the discretion whether to release is ICE's; it's the

15    Attorney General's under the statute.

16          Then we get to what the process should be when he is

17    picked up again, and this is where Mr. Horowitz and I have a

18    fundamental disagreement, is that there is a significant

19    likelihood of removal within a reasonably foreseeable future.

10:59 20    We've provided an affidavit that said Mr. Kong was detained on

21    April 17th.  He was immediately, within a couple of weeks,

22    interviewed by Cambodian officials here in the United States,

23    which, you might imagine, took some time to coordinate.  And

24    the acting field office director -- assistant field office

25    Director Greenbaum submitted a declaration where they expect

1   the travel documents by July 2nd.  So the difference in process

2   relates to the fact that he is significantly likely to be

3   removed within a reasonably foreseeable future.

4         Mr. Horowitz wants the Court to apply the --

5         THE COURT:  When you say that, you are essentially

6   saying that it is -- it's a valid detention under *Zadvydas*?

7         MS. DRISCOLL:  Yes, your Honor.

8         THE COURT:  Are you saying anything more than that?

9         MS. DRISCOLL:  For the period of detention presently?

11:00 10         THE COURT:  Yes.

11         MS. DRISCOLL:  Well, I was getting to the due process

12   argument under the regulations.

13         THE COURT:  Okay.

14         MS. DRISCOLL:  So there's two different regulations,

15   241.4 and 241.13.  And the Court in *Alam*, the Southern District

16   of Texas, just did a good job of explaining the difference and

17   when each applies.  241.4 applies here, and that applies

18   to -- excuse me -- that applies to continued detention of

19   inadmissible criminal or other aliens beyond the removal

11:01 20   period, which is exactly what we have here.  And if there is no

21   significant likelihood of removal within the reasonably

22   foreseeable future, then you go to 241.13.  241.13 says -- it

23   establishes special review procedures for aliens who are

24   subject to a final order of removal and detained under the

25   custody review procedures if the alien has provided good reason

1    to believe there is no significant likelihood of removal in the

2    reasonably foreseeable future.  So that's not where we are.  We

3    are not in 241.13.  We are in 241.4.

4          Under 241.4(k)(3), all of the review -- special review

5    procedures, the interview and the other processes that

6    Mr. Horowitz wants for his client are suspended when removal is

7    expected to be prompt.  So, in other words, there's a lawful

8    order of removal.  The Board of Immigration -- Mr. Kong didn't

9    take an appeal from that lawful order, and ICE now has

11:02 10   discretion to execute that removal order as it sees fit.  It's

11   made a determination that Mr. Kong is significantly likely to

12   be removed in the reasonably foreseeable future.  We provided a

13   declaration of the steps it's taken, and under its own

14   regulations, when that happens, it's allowed to suspend any

15   review proceedings in an effort to expedite the process.  As

16   you said, the idea behind *Zadvydas* is either remove very

17   quickly or let the person go if you can't do it within six

18   months or if there is no significant likelihood of removal,

19   which is what the Government did with Mr. Kong back in 2000

11:02 20   when Cambodia wouldn't accept him.

21         More on the due process?  So in *Rombot*, which is

22   the -- so *Alam* actually analyzes both regulations and just sets

23   it out like I did.  *Rombot* is the Judge Saris decision

24   recently, and that's different.  In that case the original

25   order of supervision was post *Zadvydas*, and at that time the

            1    Department of Homeland Security had a different notice of
            2    release which actually said something about the rights that
            3    Mr. Horowitz wishes to apply here.  There was release
            4    notification that informs the Petitioner that a violation may
            5    result in being taken back into custody and that you have an
            6    opportunity to prepare for an orderly departure.  That's 2015
            7    post *Zadvydas*.  It was in the release notification.  There is
            8    no such release notification here for Mr. Kong.  He was
            9    released in 2000.  He was not given that notice, and he's not
11:03  10    required to be given it under the regulations, and ICE didn't
            11    offer that notice as they did in the *Rombot* case.

            12           And *Alam* distinguishes *Rombot*, and *Alam* is actually
            13    directly on point because in that case ICE verbally canceled an
            14    order of supervision as they did here, and there was also no
            15    showing by the Petitioner that the Government lacked the
            16    ability to remove him promptly.

            17           But starting, I guess, where Mr. Horowitz ended
            18    initially on the jurisdictional issue, your Honor, the
            19    Government's position is that 1252(g) deprives the Court of
11:04  20    jurisdiction here.  As you found in the *Aziz* case from 2017,
            21    which Mr. Horowitz cites in his papers, the 1252(g) strips the
            22    Court of jurisdiction over any request of stay of execution of
            23    a lawful order of removal.  So the stay is gone.  And you're
            24    not alone in that finding.  Judge Saylor found that in *Julce v.*
            25    *Smith*, a 2018 case cited in our papers.  And Judge Talwani just

last week in *Duarte*, issued on May 29th, also found that the

District Court has no jurisdiction over removal orders.

These decisions are all based on a reading of the

jurisdiction stripping provisions in the First Circuit's

seminal case on this issue, *Ishak*, which is 422 F3d 22nd from

2005.

And to the extent that the Court is interested in the

suspension clause analysis, *Julce* answers that question.  There

are adequate and effective review procedures here available to

the alien.  He was able to appeal from his order removal, which

he did not do, and because he's in ICE custody, he has access

to the BIA's emergency stay proceedings, and those are the two

ways that Judge Saylor distinguished the *Devitri* case by Judge

Saris saying that in this case there are adequate and effective

review proceedings.  All the cases --

THE COURT:  Tell me about those proceedings as a

general matter.

MS. DRISCOLL:  Well, there's the ability to appeal

from the order, which he did not do.

THE COURT:  Right.

MS. DRISCOLL:  Now --

THE COURT:  The BIA emergency procedures you referred

to?

MS. DRISCOLL:  Because he's in custody, he has access

to apply for an emergency stay from the Board of Immigration

```
 1   Appeals.
 2            THE COURT:  Stay of what?
 3            MS. DRISCOLL:  Removal.
 4            But the --
 5            THE COURT:  Do those procedures give him the
 6   opportunity to complain about his detention?
 7            MS. DRISCOLL:  The notice?
 8            So I guess --
 9            THE COURT:  In other words, two bad things that he
10   complains of.  One is he's about to get removed from the
11   country.  The other is he is being held in jail.
12            MS. DRISCOLL:  Right.
13            THE COURT:  My question is -- I understand that you
14   have said that the BIA procedures would give him a basis for
15   attacking the removal or the timing of the removal, perhaps.
16   And my question is do those procedures also give him an avenue
17   to challenge his present detention pending the resolution of
18   these issues?
19            MS. DRISCOLL:  Insofar as requesting relief, I don't
20   believe so.  My understanding is that any questions raised
21   through the Board of Immigration Appeals that would ultimately
22   be presented in a petition for review to the First Circuit
23   relate to the order of removal, and if there are due process
24   issues with respect to that order and potentially the
25   revocation of the order of supervision, the due process issues
```

1    have to be reviewed on a final order by the First Circuit.  So

2    I don't think he could access release by the BIA presently.  I

3    don't know that for sure.

4            THE COURT:  Okay.

5            MS. DRISCOLL:  I'm happy to find out the answer and

6    submit something supplemental, if you'd like.

7            THE COURT:  Well, maybe if you could just direct us to

8    a citation for those regulations.

9            MS. DRISCOLL:  For the emergency stay?

11:07 10         THE COURT:  Yes.

11           MS. DRISCOLL:  Okay.  I will submit that.

12           THE COURT:  Okay.

13           MS. DRISCOLL:  I would also submit, your Honor, that

14   because here, what ICE is doing it has the full authority to do

15   under 1238(a)(6), which is detain an alien in furtherance of

16   removal, that not only is the Court stripped of jurisdiction

17   with respect to the request for stay but with respect to the

18   detention itself.  This is detention and furtherance of

19   removal.  So -- and the Supreme Court has drawn that line at

11:08 20   six months in *Zadvydas*.  Mr. Kong has been in custody for

21   50 days here.  We expect to get the travel document by

22   July 2nd, and then he will be promptly removed, of course, with

23   notice to the Court and the Petitioner.

24           THE COURT:  Did he have a right to any process before

25   he was taken into custody to -- for example, provide assurances

1    of his availability for removal and so on and so forth?

2         MS. DRISCOLL:  No, your Honor.  And the reason for

3    that is, one, ICE is not in the habit of informing Petitioners

4    when they are going to revoke their order of supervision and

5    pick them up, for obvious security and other reasons; and

6    number two, because under the regulations where there is a

7    significant likelihood of reasonable -- being removed in the

8    reasonably foreseeable future, he's in 241.1, and any process

9    is suspended.

11:09 10        If your Honor is concerned and believes that he should

11   have had some process by the agency, that the detention should

12   be reviewed, that he should have the opportunity to be heard, I

13   would respectfully suggest that the remedy would not be to

14   release him but to order the agency to provide that process.

15        And we've cited a case in our papers on that which is

16   Montillo -- *Montalvo-Murillo*, Supreme Court Case 495 U.S. 711.

17   In that case the Court found that if there is a regulatory

18   violation that related to a bond hearing in a criminal

19   detention, the remedy is not to release the person; it's to

11:09 20   order the agency to provide the bond hearing.  So, in any

21   event, I don't think release would be the answer where ICE has

22   the full discretion to detain him in furtherance of removal.

23        So for all these reasons, your Honor, I don't think

24   that Mr. Kong has displayed a likelihood of success on the

25   merits.  He's not demonstrated that his removal is not

1    reasonably likely to occur promptly.  ICE is prepared -- has

2    taken the necessary steps to obtain the travel document.  We'll

3    provide notice to the Court once that's prepared, of course

4    48-hour notice before he is transferred with an explanation of

5    what the transfer is for.

6         And today he has not yet filed a petition for review

7    or a motion -- or reopen, rather, his immigration proceedings

8    with the First Circuit, so there's no process that you would be

9    depriving him of by continuing to keep him in detention or not

11:10 10   preventing his removal.

11        MR. HOROWITZ:  Your Honor, if I may briefly.  I guess

12   the first point I would raise is that this Court absolutely,

13   without any qualification, has the jurisdiction to review the

14   legality of Mr. Kong's detention.  I just would like to read

15   briefly from the *Zadvydas* decision in case there's any dispute

16   concerning the scope of Section 242(g).  "The aliens here,

17   however, do not seek review of the Attorney General's exercise

18   of discretion, rather they challenge the extent of the Attorney

19   General's authority under the post removal period of the

11:11 20   detention statute."  So for the question of post removal of

21   detention, your Honor, without any doubt in the *Zadvydas*

22   decision, *Zadvydas*, the Supreme Court says that 242(g) does not

23   apply to post removal order detention.  So I don't think that

24   that's really a live issue, and I would urge the Court to

25   review the *Zadvydas* decision on that.

1    The second thing I would like to say, your Honor, is

2    the Government's reading of the DHS regulations turns the

3    regulations on their head.  I don't think there's any dispute

4    that in 2000, at the time Mr. Kong was released on parole on

5    his order of supervision, a determination was made that he

6    wasn't going to be removed to Cambodia in the reasonably

7    foreseeable future.  That's why they let him go.  Now the

8    Government is saying that they made that determination but now

9    they are unilaterally revoking it based on the affidavit of

11:12 10    Mr. Greenbaum.  And I would submit, your Honor, that they can't

11    do that.

12    Once the determination is made that an alien like

13    Mr. Kong has no substantial likelihood of removal to Cambodia

14    in the reasonably foreseeable future, Mr. Kong has rights under

15    8 CFR 241.13.  They cannot change that determination without

16    notice and opportunity to be heard, and they certainly can't

17    change that determination based on a summary and factless

18    affidavit like that of Mr. Greenspan [sic].  Mr. Greenspan

19    provided no information on how or why Mr. Kong will be removed.

11:12 20    It simply says that ICE removes the process of requesting

21    travel documents for Kong on March 5, 2018, and they set up a

22    meeting for him with the Cambodian government.  There is no

23    information to suggest that the Cambodian government will take

24    him back.  There is no information to suggest that something

25    has changed in the last 18 years that will permit Mr. Kong to

1   be removed.  That whole process was turned on its head by the

2   Government's bold assertion that, okay, now he can be removed.

3   Now the protections of 241.13 don't apply.  That's just wrong.

4   That's not how these regulations were set up.

5           The *Alam* decision that the Government cites so much is

6   totally in opposite.  Mr. Alam was here in the United States

7   under order of supervision, not because he couldn't be removed

8   to his native Pakistan, I believe, but because he was sick or

9   had a sick daughter.  There was some discretionary relief he

11:13 10  was seeking, and each year he applied for it and DHS gave it to

11  him.  So 241.13 didn't apply.  He was properly revoked under

12  241 point -- the other, 241.4, and that's why judge -- the

13  Southern District of Texas judge said that 241.13 didn't apply.

14  Mr. Alam had never been a recipient of a determination that he

15  couldn't be removed to his country of origin.  Mr. Alam had

16  consistently sought discretionary relief, and when the

17  Government decided not to give him discretionary relief

18  anymore, he had no protections as an alien like Mr. Kong who

19  had received a determination that he couldn't move to his

11:14 20  country of origin.

21          So the *Alam* decision, your Honor, if one reads it

22  carefully, is not on point, rather it is wholly

23  indistinguishable because Mr. Alam and Mr. Kong are very

24  different positions.

25          Now, lastly, your Honor, with respect to the other

        1    District Court and even the *Ishak* decision, I would urge the

        2    Court to review those decisions very carefully because they're

        3    all different.  They are lumped together by the Government as

        4    all supporting the general notion that this court would not

        5    interfere with the execution of the removal order.  That's not

        6    what they say.  The *Ishak* decision, the First Circuit decision

        7    had to do with an alien attempting to collaterally attack his

        8    removal order.  We know an alien can't do that.  We know

        9    Section 242, the IMA, prevents the District Court from

11:14  10    attacking the merits of a removal order.  *Ishak* is in opposite.

       11         The *Aziz* decision, which your Honor found in this

       12    Court, had to do with an alien seeking discretionary relief.

       13    The alien simply wanted more time.  The alien had been in this

       14    country for a few months, I believe, and I can double-check

       15    that in my notes, and married and wanted more time to adjust

       16    his status.  There was no Constitution liberty interests

       17    implicated there.  There were no constitutional questions.  The

       18    alien simply wanted to put a cog in the works of his removal by

       19    filing a habeas petition, and Mr. Kong would agree that in

11:15  20    situations like that where constitutional questions are raised,

       21    Section 242(g) does apply because all the alien is simply doing

       22    is attempting to hinder the discretion of the Executive Branch,

       23    which isn't allowed.  Aziz raises that issue.

       24         In Judge Talwani's recent decision in *Duarte,* it

       25    appears that the alien was given all the process that 241.13

1    requires.  He was given notice.  He was given months to deal

2    with his removal.  And, in fact, the alien in *Duarte* actually

3    was revoked because he committed a criminal act.

4         So, your Honor, if the Court reviews these decisions

5    carefully, I think the Court will find that none of them raise

6    constitutional questions and thus jurisdiction was declined by

7    the courts because the courts weren't compelled to review the

8    constitutionality of the Executive Branch misconduct as the

9    Court is required to here today.

11:16 10       So without going into the nitty-gritty of each of

11   these cases, I would submit that none of them raise substantial

12   constitutional questions that require an Article III Court to

13   review the legality of the Executive Branch conduct, and thus,

14   they are different.  And 242(g) does not, because it cannot,

15   apply.  Congress cannot insulate the Executive Branch from

16   constitutional violations because the Constitution does not

17   allow that.  It violates basic tenets of our tripartite

18   government.

19        Thank you, your Honor.

11:16 20       THE COURT:  Anything else?

21        MS. DRISCOLL:  Nothing further, your Honor.

22        THE COURT:  Can I rely on the Government's assurance

23   that 48-hour notice will be sufficient to apprise us of any

24   scheduled removal?

25        MS. DRISCOLL:  Absolutely, your Honor.  And we will

1    provide the regulation on the emergency stay procedures as

2    well.

3              THE COURT:   Thank you.   I'll take the matter under

4    advisement.

5              (Whereupon, the hearing was adjourned at 11:16 a.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF OFFICIAL REPORTER

I, Linda Walsh, Registered Professional Reporter and Certified Realtime Reporter, in and for the United States District Court for the District of Massachusetts, do hereby certify that pursuant to Section 753, Title 28, United States Code that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 18th day of June, 2018.


/s/ Linda Walsh

_____

Linda Walsh, RPR, CRR

Official Court Reporter